## GOFFINET ET AL., PLAINTIFF AND APPELLANTS, *v.* POLANCO, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Humacao in an Action to Recover an Agricultural Loan Secured by Mortgage, Etc., and for an Injunction *Pendente Lite.*

No. 2682.—Decided June 20, 1922.

INJUNCTION—PLEADING.—Section 4 of the Injunctions Act relative to the stay of proceedings by means of an injunction does not strictly or restrictedly refer to proceedings which are terminated by a final judgment, but also to proceedings after judgment when it is alleged that the judgment was obtained by fraud, mistake, accident or surprise, or that there was a confusion or conflict of titles to the property subject to execution.

ID.—ATTACHMENT.—In this case the plaintiffs petitioned for an injunction *pendente lite* to restrain the defendant from executing the judgment in his favor and against these plaintiffs in another case previously decided by the same court, the ground being that if the defendant should execute the judgment without awaiting the decision of the principal action wherein the injunction was asked for, the plaintiffs would have no remedy for their claim against the defendant, which exceeds the amount of the judgment under execution. *Held:* That an injunction was not the proper remedy, but the Act to Secure the Effectiveness of Judgments, approved March 1, 1902, was available. Section 2 of the said act prescribes the rules to which an attachment must conform. Some of these rules produce the same effect and fulfill the same purposes as an injunction, and not only do the provisions of the Act enumerate the cases to which the same apply, but, besides, subdivision (*h*) establishes a general rule covering all cases not provided for by the preceding rules, wherein the lower court has an equitable discretion to take such steps as may be proper to secure the effectiveness of the judgment in case the action should prosper.

The facts are stated in the opinion.

*Mr. H. G. Molina* for the appellants.

*Messrs. A. Sarmiento* and *J. Puig* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an appeal in proceedings for an injunction *pendente lite* which originated in the District Court of Humacao. The allegations of the petition as essential facts in support of the injunction may be condensed as follows:

That the respondent is, and on March 27, 1914, was the owner of a property which is described in the petition.

That prior to the 27th of March, 1914, the respondent had

entered into two contracts for the cultivation and grinding of sugar cane with the Societé Anonyme des Sucreries de Saint Jean, the owner of the Santa Juana Central, and at the same time entered into other agricultural loan contracts for financing the crops, and that on the said March 27, 1914, the petitioners and the respondent entered into a new contract by a public deed wherein, after describing the said property of the respondent, the following was stated: That for the cultivation of the property of the respondent two contracts had been made concerning the planting and grinding of sugar cane, one on April 11, 1912, and the other on July 17, 1912, and to provide for the planting and cultivation of the sugar cane they entered into an agricultural loan contract by a public deed executed on April 11, 1912, and presented in the registry for record; that on March 17, 1914, the petitioners and the respondent agreed upon a liquidation of the account current and the balance amounted to $15,725.55, but it being necessary for the petitioners to advance more money to the respondent, it was agreed to increase the agricultural loan by the sum of $14,274.45, which added to the said balance made a total of $30,000 and to secure that amount with interest at the agreed rate and the sum fixed for costs, the respondent created a voluntary mortgage on the said property in favor of the petitioners for the period and under the conditions set out in the petition under letters "a," "b," "c," "d," "e," "f," and "g," which need not be transcribed for the purposes of the injunction prayed for.

That the petitioners duly performed each and all of the obligations assumed by them by virtue of the said contract, advancing the sums of money that the respondent was entitled to receive and also making other advances which greatly exceeded what the petitioners agreed to advance under the terms of the said contract; that the petitioners credited the account of the respondent with the selling price of his sugar and, notwithstanding the sums credited, when the contract

expired on August 1st, 1917, there was a balance in favor of the petitioners of $18,286.46.

That accompaying the petition and made a part of it is an itemized statement of the account current and that the balance of that account, as before stated, amounted to $18,286.46 on August 1, 1917, and the said sum with interest at the rate mentioned in the said contract amounted on August 1, 1921, to $26,773.22, which amount the respondent owes to the petitioners with interest at the rate of ten per cent.

That early in August of 1917 the petitioners and the respondent checked each and all of the items of debit and credit in the said account and that the respondent agreed to the account with the exception of the computation of the interest, but the petitioners allege that the interest is correctly calculated and in accordance with the contract.

That notwithstanding the fact that the account current is absolutely correct and accurate, the respondent has fraudulently refused to acknowledge its correctness in an express manner.

That the respondent has not paid to the petitioners the said balance of the financing account or any part of it, although the petitioners have demanded payment of him.

That on August 24, 1917, the petitioners brought an action in the District Court of Humacao under the special proceedings of the Mortgage Law for the foreclosure of the said mortgage, and that on October 9, 1917, the respondent brought an action in the same court for the annulment of the said foreclosure proceedings and judgment was entered on May 21, 1919, in favor of the respondent and against the petitioners declaring null and void the foreclosure proceedings and also the records made by virtue thereof, and the petitioners were adjudged to pay to the respondent the sum of $9,923 as damages and the costs; that in the same action the court below made an order on September 14, 1921, for the execution of the said judgment against the petitioners for

payment to the respondent of the said sum of $9,923 with interest at the legal rate, and that on the 28th of the same month the court amplified the said order to the effect that the marshal should collect from the petitioners the sum of $19,202, the amount for which the mortgaged property was sold in the said foreclosure proceedings on October 24, 1917, which sum was paid by the purchasers of the property, Florencio and Jacinto Polanco, who took possession of the property and received its fruits and profits from and after the date of the said sale.

That the respondent is absolutely insolvent; that he owns only the said property, which for the purpose of insular taxes is assessed at $19,202 and has a value of not more than $25,000; that the said property is encumbered by a mortgage in favor of the Banco Territorial y Agrícola amounting to at least $5,453.70, and by another mortgage in favor of Ricardo Alvarez González for the sum of $2,500; that apart from these mortgages and the $26,776.22 owing by the respondent to the petitioners, the said respondent also owes $7,000 to N. Santini & Co. and $1,927.30 to Cipriano Manrique Gil.

That the said N. Santini & Co. and Cipriano Manrique have each brought an action against the respondent in the court below, the cases being numbered 7896 and 7952, and by virtue of orders of the said court in those cases an attempt has been made to attach the $9,923 and interest which by the said judgment of that court the petitioners have been adjudged to pay to the respondent; that if the petitioners should be compelled to pay to the respondent the amount of the said judgment, without being allowed to credit it to the account of $26,776.22 which the respondent owes the petitioners, they will be unable to recover from the respondent the said $26,776.22 because of his insolvency.

That for the reasons stated, if the court below should permit the respondent to proceed with the execution of the

judgment in his favor of May 21, 1919, it would cause the petitioners considerable loss or damages which would be irreparable, inasmuch as the petitioners are without any remedy to stay the execution of the judgment either within the case wherein it was entered or in any other proceeding under the law, and only in a court of equity.

On the facts alleged the following was the prayer of the petition: First, to adjudge that the respondent owes the petitioners the sum of $26,776.22 with interest at the rate of ten per cent per annum from August 1, 1921, and to order him to pay to them the difference between that sum and the amount of the judgment of May 21, 1919, in case No. 5094, or $9,923, with interest at the legal rate from the date of the judgment and such sum as may be finally fixed as costs; second, to issue a writ of injunction *pendente lite* enjoining the respondent from proceeding with the execution of the said judgment and staying all proceedings for the execution thereof pending a final decision as to the amount that the respondent owes to the petitioners, and then from the amount of such final judgment to deduct the amount of the said judgment and to enjoin all proceedings for the execution of the said judgment; third, that an order be made directed to the respondent requiring him to appear before the court to show cause why he should not be enjoined in the manner prayed for; fourth, that the petitioners be granted any other relief that the court, as a court of equity, may deem just and equitable.

The lower court ordered that the respondent appear to show cause why the petition for an injunction should not be granted. The parties appeared at the hearing and the respondent opposed the petition for an injunction on the following grounds: First, because the court had no jurisdiction to grant an injunction in this case number 8017, for it had such jurisdiction only in case number 5094 to annul the foreclosure proceedings and for damages; second, because the matter is *res judicata*, inasmuch as this same question was raised

by the petitioners against the respondent in case number 5094 and the lower court denied the petition for an injunction and no appeal was taken from that judgment; third, because it is expressly forbidden by subdivision 1 of section 4 of the Injunctions Act, for in this case it is sought to stay a pending judicial proceeding and the petitioners allege that if it is not granted they will suffer irreparable damages and not that the injunction is necessary to prevent a multiplicity of proceedings, which is the only exception to the rule laid down in said statute; fourth, because of *litis pendencia,* there being pending in the United States District Court for Porto Rico a petition for an injunction similar to the petition presented to the lower court in this case.

On February 17, 1922, the lower court dismissed the petition for an injunction and from that decision the present appeal has been taken. The parties filed briefs and appeared at the hearing on the appeal.

The appellants assign the following errors as committed by the lower court:

1. In denying the injunction *pendente lite* prayed for.

2. In holding that the petitioners have an adequate, speedy and effective remedy under the Act to secure the effectiveness of judgments of March 1, 1902.

3. In applying to this case subdivision 1 of section 4 of the Injunctions Act of March 8, 1906.

4. In improperly applying to this case the decisions of the Supreme Court in the cases of *Estate of Iglesias* v. *Bolívar,* 11 P. R. R. 548; *Auffant* v. *Succession of Ramos et al.,* 23 P. R. R. 385, and *Ortiz* v. *Aguayo,* 26 P. R. R. 668.

We would say that the assignment of errors rather refers to the legal reasons on which the court below based its decision. If we believe that its decision is in harmony with the law and is just and the reasons on which it is based are erroneous, it is clear that it would be immaterial and unnecessary to assign these reasons as errors, but that is a premise which

we can not take for granted absolutely as a conclusion and the proper manner of determining whether the decision is just and according to law is to examine the errors assigned and, if they are unfounded, to discover whether or not there are other grounds to sustain the said decision.

We shall not follow the order adopted by the appellants in discussing the errors assigned.

We shall begin by saying that we have grave doubts that the decisions cited by the lower court were entirely applicable to the present case.

The principle generally admitted by jurisprudence is that a court can not stay by injunction the execution of judgments or orders of another court of equal and coordinate jurisdiction. Estee's, volume 3, page 5. This is the theory sustained by those decisions. But when the same court is involved the legal status of things is different. To that effect, in the case of *Estate of Iglesias* v. *Bolivar, supra,* this court expressed itself as follows: ''Under the jurisprudence of California, proceedings of this nature were required to be instituted in the court rendering the judgment or decree, the execution of which is sought to be restrained, or in the court where the proceedings were in progress.''

In the lower court the proceedings sought to be restrained are pending and if the injunction lies for other reasons the same court is the one with jurisdiction to grant it.

Another assignment is the improper application of section 4 of the Injunctions Act of March 8, 1906, subdivision 1 of which reads as follows:

''Sec. 4.—An injunction can not be granted:
''1. To stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded unless such restraint is necessary to prevent a multiplicity of such proceedings.''

The assignment, as the appellants discuss it, is that the judicial proceeding to which reference is made in the said

section of the Injunctions Act does not include the execution of a judgment.

If what the appellants mean is that the execution of a judgment can be stayed by injunction, we would have no objection to that construction. But even then we have to consider whether the prohibition of the said section that an injunction does not lie unless it is necessary to prevent a multiplicity of proceedings is complied with or whether it is necessary that there be other requirements having the same effect. On this point Spelling, volume 1, page 101, says:

"Before judgment, the prevention of a multiplicity of suits and the existence of rules which prevent equitable defences, are the usual grounds upon which legal proceedings are enjoined. Before judgment, fraud, mistake, accident, and surprise are seldom made the basis of an application for relief. But after an action at law has proceeded to judgment, the rights and relations of the parties thereto become considerably altered. The evil of a multiplicity of suits is no longer present or important, except in the single instance of confused and conflicting claims to property taken on execution. * * *."

Thus, section 4 of the Injunctions Act relative to the stay of proceedings by means of an injunction does not refer exclusively or strictly to proceedings which are terminated by a final judgment, but also to proceedings after judgment, provided that it is alleged that the judgment was obtained by fraud, mistake, accident or surprise, or that there was confussion or conflict of rights in the property subject to execution. The case of *Gregory* v. *Ford,* cited by appellants, corroborates the rule which we have laid down. In that case it was held that "courts of chancery do not lightly interfere with judgments at law. It is only for the prevention of fraud, or to relieve from substantial injury or gross injustice." However, the petition contains no allegations that would require us to examine the case in this light. No fraud, mistake, accident or surprise is alleged as the means by which the respondent obtained the judgment which annulled the fore-

closure proceedings and adjudged the petitions to pay to him the sum of $9,923 and the costs. The fact that the Injunctions Act of 1906 adopted that part of the principles of equity in force in the United States regarding injunctions requires us to construe section 4 of the Injunctions Act in consonance with the doctrine referred to.

The last assignment by the appellants is that the court erred in holding that the petitioners had an adequate, speedy and effective remedy under the Act to secure the effectiveness of judgments of March 1, 1902.

The petitioners discuss that assignment from two aspects. One is that the Act to secure the effectiveness of judgments would be inadequate because other creditors have attempted to attach the credit of $9,923 which the respondent obtained by judgment, and they maintain that the said Act does not protect them in any way because any attachment that the petitioners might obtain would have to be secondary to those of the other creditors. These creditors are not parties to this proceeding and we could make no declaration regarding them.

The other aspect of the question presented by the petitioners is that if the respondent should execute the judgment for $9,923 without awaiting the decision of the principal action wherein this injunction is asked for, the petitioners would have no way of deducting the respondent's claim of $9,923 from their larger claim. We think, however, that an injunction is not the appropriate remedy in this case. The petitioners could have found an adequate remedy under the Act to secure the effectiveness of judgments of March 1, 1902. Section 2 of the said Act prescribes the rules to which an attachment must conform. Some of these rules produce the same effect and fulfill the same purposes as an injunction, and besides specifying the cases to which they are applicable, subdivision (*h*) of the Act establishes a general rule covering all cases not provided for by the preceding rules and gives

the lower court equitable discretion to adopt the proper measures to secure the effectiveness of the judgment in case the action should prevail.

For the foregoing reasons the order of the inferior court must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.